IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KYLI HAMMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-245-D |
| ) | |
| LYNDON SOUTHERN INSURACE ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Before the Court are Plaintiff's Motion for Partial Summary Judgment [Doc. No. 43] and Defendants' Motion for Partial Summary Judgment [Doc. No. 47], filed pursuant to Fed. R. Civ. P. 56 and LCvR56.1. Plaintiff seeks a determination of a discrete issue: whether "the cancellation of her insurance policy by Defendants was improper as a matter of law." *See* Pl.'s Mot. at 1. Defendants seek a judgment in their favor on Plaintiff's tort claims of insurer's bad faith, fraud, and tortious interference with contract. Both Motions are fully briefed and at issue. *See* Defs.' Resp. Br. [Doc. No. 52]; Pl.'s Resp. Br. [Doc. No. 53]; Pl.'s Reply Br. [Doc. No. 54].

**Factual and Procedural Background**

Plaintiff Kyli Hammond brings suit to recover damages for an alleged breach of contract by Defendant Lyndon Southern Insurance Company ("Lyndon") due to its denial of an insurance claim under an automobile insurance policy. She also claims that Lyndon and Defendant Jupiter Managing General Agency, Inc. ("Jupiter"), which administered the

policy, breached a duty of good faith and fair dealing in handling the insurance claim. Plaintiff further claims that Jupiter tortiously interfered with the insurance contract and engaged in fraudulent conduct in administering the policy and handling the claim. The case was filed in state court and timely removed based on federal diversity jurisdiction.

This is not a typical insurance case. Before removal, Defendants filed a joint answer in which they admitted Plaintiff suffered a covered loss, a breach of contract occurred, and Plaintiff's insurance claim "should have been handled differently." *See* Answer [Doc. No. 4-1], ¶¶ 8, 10, 13, 15, 20-22. Further, in the Joint Status Report filed before the initial scheduling conference, the parties stipulated to the following facts: Plaintiff was involved in a single-car accident on July 19, 2017; she had an insurance policy with Lyndon that included collision and comprehensive coverage for the vehicle involved in the accident; Jupiter was responsible for administering the policy, payments, notices, and claims; the policy was in full force and effect at the time of the accident; Plaintiff reported the loss to Defendants and initiated a claim; Lyndon denied coverage for the loss but later withdrew the denial; Lyndon breached the insurance contract; and Jupiter charged Plaintiff "reinstatement fees" for alleged lapses in coverage. *See* Joint Status Report [Doc. No. 10] at 3, ¶ 3. Other material facts are also undisputed, as discussed *infra*. Given this agreement, the parties seek summary judgment rulings on several issues.

## Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id*.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* Fed. R. Civ. P. 56(c)(1)(A). "Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). The inquiry is whether there is a need for a trial – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 251.

## Undisputed Facts

Along with the stipulated facts, additional facts are established by the summary judgment record. Plaintiff purchased the insurance policy on April 4, 2017, to cover her vehicle for a six-month period by making an initial premium payment and agreeing to make

five installment payments due on the fourth day of each month.  During each of the next three months, Plaintiff failed to make a timely payment (May 4, June 4, and July 4), but she did make late installment payments (May 16, June 10, and July 14).  Each month, Jupiter mailed Plaintiff a billing notice (stating an installment number, payment amount, and due date), a cancellation notice (stating the policy would be cancelled if payment was not received by a later date – May 12, June 10, and July 10), and a reinstatement notice (stating the policy had been reinstated upon payment – May 17, June 11, and July 15).

Each of the cancellation notices was sent before the deadline to make an installment payment had passed; the notices warned that coverage would be cancelled for nonpayment by a cancellation date and, if cancellation occurred, a $15 reinstatement fee would be required to reinstate coverage.[1]  Each time Plaintiff missed a payment deadline, the policy was terminated on the cancellation date (May 12, June 10, and July 10), and a $15 fee was assessed.  Each cancellation date was less than 10 days after an installment was due, even though the policy required 10 days' notice to cancel for nonpayment of premiums.

Within days after the third reinstatement notice, Plaintiff had a single-car accident in the insured vehicle on July 19, 2017, and promptly submitted an insurance claim.[2]

---

[1] For example, the first cancellation notice was dated April 30, 2017, requested payment of the installment amount "by the cancellation date," and stated: "If you fail to pay the Total Amount Due before May 12, 2017, your insurance coverage will be cancelled effective 12:00 AM STANDARD TIME on May 12, 2017."  *See* Defs.' Mot., Ex. 3 [Doc. No. 47-3] (emphasis omitted); *see also id.* Ex. 6 [Doc. No. 47-6] (identical form with cancellation date of June 10, 2017), Ex. 9 [Doc. No. 47-9] (identical form with cancellation date of July 10, 2017).

[2] Defendants state that this was Plaintiff's second claim, that her first claim was made within the first month of coverage due to a tree falling on the vehicle, and that Jupiter promptly paid the claim.  Although Plaintiff does not dispute these facts, Defendants provide no evidentiary support for them, and their relevance to the issues presented is unclear.  Thus, they are disregarded.

Jupiter immediately mailed a reservation of rights letter, stating "there is a potential coverage problem" and "[t]his loss requires further investigation." *See* Def.'s Mot., Ex. 11 [Doc. No. 47-11]. Specifically, "[a] preliminary review of your policy indicates that the above mention [sic] loss occurred within 5 DAYS after your policy reinstated. Your policy cancelled on 07/10/17 and reinstated effective 07/15/17." *Id.* (emphasis in original).

Plaintiff contacted Jupiter by telephone on July 25, 2017, about submitting a photograph taken at the scene of the accident to prove the date of loss. Plaintiff submitted the photo the next day, but it lacked a date stamp. On August 18, 2017, Jupiter's claim adjuster recommended a "soft denial" of the claim "pending proof of date of loss within [the] coverage period;" Jupiter's claim file contains notes stating that Plaintiff had not provided such proof – "no towing[,] no police report[,] photo taken, however no timestamp to confirm date and time of loss." *See* Def.'s Mot., Ex. 12 at 3 (8/18/17 entry). A supervisor approved the recommendation on August 23, 2017, and a denial letter was sent to Plaintiff on August 24, 2017.

Despite the recommended "soft denial" (a term which is not explained by the record), Plaintiff received a letter that stated in full:

> Dear Sirs/Madam:
>
> The investigation of the above captioned matter has been completed and after careful examination of the circumstances surrounding this accident, we believe there is sufficient evidence at this time to make a proper decision regarding this claim. After further review of your policy there is indication that the above mention [sic] loss occurred within 10 days of your policy's inception, renewal, reinstatement or coverage changes.
>
> After thorough investigation and review regarding the information surrounding this loss we unfortunately must respectfully decline to provide coverage for this

5

loss.  Neither the insured or the claimant provided evidence that this loss occurred within the policy period.

Please contact the undersigned should you have any additional information regarding this claim.  Should you have any information which would affect this decision please contact this office immediately.

Defs.' Mot., Ex. 13 [Doc. No. 47-13].

The vehicle was also covered by an insurance policy related to a car loan, and the lender made a claim under its policy after Defendants denied coverage.  Securian Casualty Company paid the lender $10,966.06 in settlement of the claim in October 2017.  Plaintiff filed this action in December 2017.[3]

## Discussion

### A.  Defendants' Cancellation of the Policy

Plaintiff seeks a ruling on whether Defendants properly cancelled the policy.  She asserts Oklahoma law is clear that an anticipatory or conditional notice of cancellation – issued before an incident of nonpayment has occurred – is legally insufficient to permit cancellation of a policy that requires prior notice.  *See* Pl.'s Mot. at 4-8.  Plaintiff relies on two Oklahoma Supreme Court decisions as dispositive of the issue: *Equity Insurance Co. v. City of Jenks*, 184 P.3d 541 (Okla. 2008); and *Equity Insurance Co. v. St. Clair*, 196 P.3d 981 (Okla. 2008).  Although not entirely clear, the Court understands that Plaintiff seeks a resolution of this issue in order to advance her claim that Defendants engaged in bad faith

---

[3] Defendants also present evidence, which is undisputed, that Plaintiff stated in September 2017 that she was preparing to seek bankruptcy protection, and Plaintiff later filed a voluntary bankruptcy petition in June 2018 (while this case was pending in state court).  Defendants do not explain the relevance of these facts, which postdate the denial of coverage.

6

conduct by relying on a lapse in coverage to deny the insurance claim, and to recover the amount of reinstatement fees that were charged. *See* Pl.'s Mot. at 10; Reply Br. at 1, 4.

In response, Defendants first argue that the cancellation issue is "irrelevant" because "the date of loss occurred on a date coverage was in force and effect." *See* Defs.' Resp. Br. at 2. This argument seems to focus on Plaintiff's breach of contract claim; Defendants concede "[t]he fact that the accident happened so close to a lapse in coverage is one of the reasons why the claim was initially denied." *Id.* at 3. Logically, this concession means the issue is relevant to the handling of Plaintiff's insurance claim and the denial of coverage. Regarding reinstatement fees, Defendants point out that Plaintiff's cited cases do not address whether an insurer can properly assess a fee for an insured's untimely payment of a premium installment. Defendants argue that "[a] consequence [of] not making premium payments when due is the imposition of a $15 reinstatement fee that Plaintiff agreed to when she took out the policy." *Id.* at 4.

Upon consideration, the Court finds that the issue of improper cancellation of insurance coverage under the policy is directly relevant to Plaintiff's bad faith claim. The Court further finds that Defendants' effort to distinguish the Equity Insurance Company cases – arguing that those cases concerned third-party benefits and compulsory insurance law (*id.* at 3-4) – is unpersuasive. The holding of the Oklahoma Supreme Court in each case was clear and unequivocal, and Oklahoma's public policy of protecting innocent third parties played no apparent part in the decision. Instead, applying a notice provision like the one in Lyndon's policy in this case, the Oklahoma Supreme Court elected to follow the weight of authority from other jurisdictions interpreting similar provisions to mean "that

7

notice of cancellation for nonpayment of premium cannot be given before the premium is due." *See City of Jenks*, 184 P.3d at 544 (discussing cases). Specifically, the supreme court held: "Equity's notice of its intent to cancel the policy at a future date if an installment premium was not paid was ineffective notice of cancellation for nonpayment of premium under the terms of the policy." *Id*. at 541-42. Further, after surveying the case law and explaining its rationale, the court announced: "Under the terms of the Equity policy, we find that effective notice of cancellation for nonpayment of premium cannot be given before the premium is due." *Id*. at 545.[4]

The Oklahoma Supreme Court reaffirmed these clear pronouncements a few months later, ruling that *City of Jenks* was dispositive of additional arguments advanced by other parties. In *St. Clair*, the supreme court reiterated its position: "To effectively cancel its automobile insurance policy for nonpayment of a premium in accordance with the policy

---

[4] The supreme court reasoned as follows:

> The policy in the case at bar states that the company "may cancel" for nonpayment of premium. The use of the word "may" indicates that the insurer has the option to cancel the policy for nonpayment of premium. This language suggests to the insured that if he fails to pay an installment, the company may elect to cancel the policy, but it must give him ten days' notice if it does so. It would lead the insured to believe that a failure to pay the premium on or before the due date does not automatically result in cancellation, but merely gives rise to the possibility of cancellation.
> We find that Equity Insurance Company's anticipatory notice of cancellation, conditioned upon [the insured's] failure to make the next installment payment when due, was ineffective to cancel the policy. If the insurer elects to cancel the policy for nonpayment of premium, then according to the policy terms it must give the insured a ten-day notice. Notice of *cancellation* cannot be given prior to occurrence of the event that triggered the insurer's option to cancel: nonpayment of premium.

*City of Jenks*, 184 P.3d at 545 (citation omitted, emphasis in original).

8

terms, Equity must provide an insured at least a ten-day notice of its clear, unequivocal *in praesenti* act of canceling the policy *following* the insured's failure timely to pay the premium that was due." *St. Clair*, 196 P.3d at 984 (emphasis in original).

In this case, Defendants do not dispute that the notice provision of Lyndon's policy and Equity Insurance Company's policies are almost identical. *Compare City of Jenks*, 184 P.3d at 543, and *St. Clair*, 196 P.3d at 982 n.5, *with* Pl.'s Am. Pet. [Doc. No. 1-2], Ex. 2 (Policy at p.17). It is also undisputed that Defendants' notice of cancellation was given to Plaintiff before the installment payment was due. Because Defendants did not provide effective notice of cancellation for nonpayment, they could not properly cancel Plaintiff's insurance coverage. The Court therefore finds that Plaintiff's insurance policy remained in effect and no lapse in coverage occurred.

On the other hand, regarding Defendants' assessment of a reinstatement fee each time Plaintiff made an untimely installment payment, the Court cannot discern any relevance of this issue to an actionable claim asserted by Plaintiff. The operative pleading is her state court Amended Petition [Doc. No. 1-2]. Allegations that "Jupiter improperly and without sufficient or proper notice . . . cancelled Plaintiff's policy of insurance in May 2017, June 2017, and July 2017" and that "Jupiter wrongly charged Plaintiff a fee of $15.00 to reinstate her policy of insurance in May 2017, June 2017, and July 2017" (*id*. ¶¶ 36-37) are made solely to support a claim against Jupiter of tortious interference with contract. *Id*. at 4-7, ¶¶ 32-45 (Third Cause of Action). For reasons discussed *infra*, the Court finds that Jupiter is entitled to a judgment as a matter of law on the tortious interference claim. Therefore, there is no need to resolve whether Plaintiff's view of the collectability of a

9

reinstatement fee is correct. If the Court were to render a decision on this issue, it would essentially be giving an advisory opinion, which is improper. Therefore, the Court declines Plaintiff's invitation to rule on whether Defendants improperly charged her a $15 fee.

**B.     Plaintiff's Claim of Insurer's Bad Faith**

Defendants assert that Plaintiff cannot prove that their handling of her insurance claim was unreasonable and constituted bad faith conduct.[5] They rely on the principle that the existence of a coverage dispute precludes liability; they "contend a legitimate dispute existed as to the date of Plaintiff's claim." *See* Def.'s Mot. at 7. Defendants also rely on the rule that bad faith "requires a showing of 'more than simple negligence.'" *Id*. at 8 (quoting *Badillo v. Mid Century Ins. Co*., 121 P.3d 1080, 1093 (Okla. 2005)).

Under Oklahoma law, an insurer has an "'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo*, 121 P.3d at 1093 (quoting *Christian v. Am. Home Assur. Co*., 577 P.2d 899, 901 (Okla. 1977)); *accord Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000). "[A]n insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute" is well established. *Gov't Employees Ins. Co. v. Quine*, 264 P.3d 1245, 1249 (Okla. 2011); *see Ball v. Wilshire Ins. Co*., 221 P.3d 717, 725 (Okla. 2009); *Brown v. Patel*, 157 P.3d 117, 126-27 (Okla. 2007). "However, when presented with a claim by its insured, an insurer 'must conduct an investigation reasonably appropriate under the circumstances' and 'the

---

[5] Defendants do not deny that they both owed Plaintiff a duty of good faith and fair dealing; they question only whether the alleged conduct (primarily, Jupiter's claim handling on behalf of Lyndon) was sufficient to constitute bad faith.

10

claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient.'" *Newport*, 11 P.3d at 195 (quoting *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984)); *see Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991); *see also Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012). An insurer's duty "to timely and properly investigate an insurance claim is intrinsic to an insurer's contractual duty to timely pay a valid claim." *Brown*, 157 P.3d at 122 (emphasis omitted). "If there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of an insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *Newport*, 11 P.3d at 195 (internal quotation omitted); *accord Badillo*, 121 P.3d at 1093.

Upon consideration of the summary judgment record, viewed in the light most favorable to Plaintiff as required by Rule 56, the Court finds that a genuine dispute of material facts precludes summary judgment on the issue of bad faith conduct. Plaintiff has presented sufficient facts from which reasonable jurors could find that Defendants did not conduct a timely investigation or take appropriate action under the circumstances and, instead, unreasonably denied Plaintiff's insurance claim based solely on her alleged failure to provide proof that the loss occurred during the policy period. The reasonableness of Defendants' conduct to ensure that Plaintiff received the benefits of her insurance policy is reasonably subject to different conclusions and must be resolved by a trier of fact.

Therefore, the Court finds that Defendants are not entitled to summary judgment on Plaintiff's bad faith claim.

## C.      Plaintiff's Claim of Tortious Interference with Contract

Jupiter asserts that Plaintiff's tortious interference claim against it fails as a matter of law because "the claim is viable only if the interferor *is not* a party to the contract or business relationship." *See* Defs.' Mot. at 10 (emphasis in original) (citing *Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1209 (Okla. 1996), and *Wilspec Tech., Inc. v. DunAn Holding Group Co.*, 204 P.3d 69, 74 (Okla. 2009)).  Jupiter argues that Plaintiff cannot prevail on a claim that Jupiter interfered with her insurance contract with Lyndon where Jupiter "was a party to the contract and business relationship." *See* Defs.' Mot. at 10.

Plaintiff makes no effective response to this argument.  Citing *Morrow Development Corp. v. American Bank & Trust Co.*, 875 P.2d 411, 416 (Okla. 1994), she argues only: "That Jupiter's actions were pursuant to a contract it had with Lyndon Southern does not automatically and necessarily inoculate it from a tortious breach of contract [sic] claim." *See* Pl.'s Resp. Br. at 12 (footnote omitted, noting that Jupiter had not adduced proof of any contract with Lyndon).[6]

Oklahoma law prohibits a tortious interference claim against a defendant who was either a party or an agent acting on behalf of a party to the contract.  The Oklahoma Supreme Court held as a matter of law in *Voiles*, 911 P.2d at 1210, that a defendant "cannot be liable for wrongfully interfering with a contract if it was acting in a representative capacity for a party to that contract."  In so ruling, the court relied on an established legal principle. *See Ray v. Am. Nat'l Bank & Trust Co.*, 894 P.2d 1056, 1060 (Okla. 1994)

---

[6] The cited legal authority addresses when conduct may be privileged or excused. *See Morrow*, 875 P.2d at 417.

(affirming summary judgment for defendant who "was at all times acting on behalf of [contracting party]" because defendant "could not wrongfully interfere with a contract concerning which it was acting in a representative capacity for a party").

In this case, Plaintiff's tortious interference claim is based on Jupiter's actions in sending billing, cancellation, and reinstatement notices, in cancelling her insurance policy, in charging reinstatement fees, and "[i]n handing the administration of Plaintiff's policy and claim." *See* Am. Pet. ¶¶ 33-37, 39. From the pleading stage, however, it has been undisputed that Jupiter was responsible for administering the policy, payments, notices, and claims on behalf of Lyndon. Each of the written notices makes clear on its face that it was sent on Lyndon's behalf. The billing and cancellation notices bear both Jupiter's and Lyndon's names and request a payment that may be mailed directly to Lyndon. *See*, *e.g.*, Defs.' Mot., Exs. 2 & 3 [Doc. Nos. 47-2 and 47-3]. The reinstatement notices were sent in the form of a letter from Lyndon. *Id.* Ex. 4 [Doc. No. 47-4]. Plaintiff's insurance claim under the policy was made directly to, and handled solely by, Jupiter on behalf of Lyndon. *See id.* Ex. 12 [Doc. No. 47-12] (claim file of both Jupiter and Lyndon); Ex. 13 [Doc. No. 47-13] (denial on Lyndon letterhead, signed by Jupiter claim adjuster, stating Jupiter is providing policy and claims administration for Lyndon). Under the circumstances shown by the record, there can be no question that Jupiter was not meddling in Plaintiff's insurance contract with Lyndon but, instead, was performing it on Lyndon's behalf.

In short, Plaintiff's claim against Jupiter for allegedly interfering with her insurance contract with Lyndon is based solely on Jupiter's acts on behalf of Lyndon with respect to the contract. Therefore, the Court finds that this claim fails as a matter of law.

**D.     Plaintiff's Fraud Claim**

Although not entirely clear, Jupiter seems to assert only that Plaintiff lacks proof of an essential element of a fraud claim – that is, a false misrepresentation of fact – because the claim is based solely on Jupiter's statements in billing and cancellation notices regarding the legal status of the policy. *See* Defs.' Mot. at 11. Plaintiff disputes this assertion. She argues that Jupiter also made material misrepresentations of fact during the handling of her insurance claim. Although one might argue that these alleged misrepresentations also concerned legal rather than factual matters – such as the types of evidence that Plaintiff must produce to substantiate her claim – the Court declines to entertain an argument that Jupiter has not actually made. Upon consideration of Defendants' Motion, the Court finds that Jupiter has failed to carry its initial burden under Rule 56 to demonstrate the absence of a dispute of material fact warranting summary judgment on Plaintiff's fraud claim.

## Conclusion

For these reasons, the Court finds that Plaintiff is entitled to a determination as a matter of law that Defendants' cancellation of her coverage under the insurance policy was ineffective and that Jupiter is entitled to summary judgment on Plaintiff's claim for tortious interference with contract, but that summary judgment is not warranted on any other issue or claim addressed by the Motions.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment [Doc. No. 43] is GRANTED, as set forth herein, and that Defendants' Motion for Partial Summary Judgment [Doc. No. 47] is GRANTED in part and DENIED in part.

Plaintiff's breach of contract claim against Defendant Lyndon Southern Insurance Company, her bad faith claim against both Defendants, and her fraud claim against Defendant Jupiter Managing General Agency, Inc. remain for trial.

IT IS SO ORDERED this 19th day of August, 2020.

TIMOTHY D. DeGIUSTI
Chief United States District Judge